# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF RHODE ISLAND


ROBERT J. DILEONARDO; GLORIA DILEONARDO;
DILEONARDO INTERNATIONAL, INC.; POST ROAD
PROPERTIES, LLC.; DILEONARDO INTERNATIONAL
PHILIPPINES, LIMITED; DILEONARDO
INTERNATIONAL PACIFIC, LIMITED; AND
DILEONARDO INTERNATIONAL MIDDLE EAST,
LIMITED,

                                   Plaintiffs,

        v.                                    C.A. No. 10-361-ML

HARTFORD CASUALTY INSURANCE COMPANY,
                                   Defendant.


## MEMORANDUM AND ORDER

The plaintiffs[1] in this case, DiLeonardo International, Inc.,

Post Road Properties, LLC, and DiLeonardo International Pacific,

Limited (together, the "Plaintiffs"), seek coverage under an

insurance policy (the "Policy") issued by Hartford Casualty

Insurance Company ("Hartford") for business income losses the

Plaintiffs allege to have suffered after their communications

system was damaged by a lightning strike.  The Plaintiffs assert

that they lost two lucrative hotel design contracts because the

---

[1]

    Plaintiffs DiLeonardo International Philippines, Limited;
DiLeonardo International Middle East, Limited; Robert J.
DiLeonardo; and Gloria DiLeonardo (both principal stock holders in
the various DiLeonardo companies) voluntarily dismissed their
claims, with prejudice, by stipulation on August 10, 2011 (Docket
# 16).

1

resulting damage impacted the Plaintiffs' ability to communicate with their clients by voice mail and/or fax. The Plaintiffs allege, *inter alia*, that their communications system was not completely restored until two months after being struck by lightning, by which time two of their clients had cancelled service contracts with two of Plaintiffs' companies.

The matter before this Court is Hartford's motion for summary judgment as well as four separate motions by Hartford to strike certain submissions made by the Plaintiffs in their objection to Hartford's summary judgment motion.

## I. Factual Summary[2]

DiLeonardo International, Inc.("DiLeonardo International") is a Rhode Island corporation engaged in the business of interior architectural design for the hotel and hospitality industry. DiLeonardo International Pacific, Limited ("DiLeonardo Pacific"), a separate affiliated entity which is organized and does business in Hongkong, provides some services for DiLeonardo International, including construction supervision and administration for DiLeonardo International.

In early December 2007, Hartford issued the Policy to the Plaintiffs. Named insureds include Robert J. and Gloria DiLeonardo

---

[2]

The factual summary is based primarily on Hartford's statement of undisputed facts; Plaintiffs' objections to some of the statements are noted herein.

d/b/a Post Road Properties ("Post Road"), and DiLeonardo International, as well as Lia Giana Development LLC, an entity which is not involved in this litigation. DiLeonardo Pacific is not a named insured under the Policy. Hartford's Ex. F.

The Policy provides that Hartford "will pay for direct physical loss of or physical damage to Covered Property at the premises described in the Declarations . . . caused by or resulting from a Covered Cause of Loss." Hartford's Ex. G., page 1 of 25. It also provides coverage for "the actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration.' The suspension must be caused by direct physical loss of or physical damage to property at the 'scheduled premises.'" Id. at page 10 of 25. "Suspension" is defined as the "partial slowdown or complete cessation of your business activities; or . . . [t]hat part or all of the 'scheduled premises' is rendered untentanable [sic] as a result of a Covered Cause of Loss if coverage for Business Income applies to the policy." Id.

However, the Policy will not cover "[a]ny Extra Expense, or increase of Business income loss, caused by or resulting from . . . "[s]uspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of your 'operations', we will cover such loss that affects your Business Income during the 'period of

restoration.'" <u>Id.</u> at page 18 of 25.

The Policy defines "Operations" as "your business activities occurring at the 'scheduled premises' and tenantability of the 'scheduled premises.'" <u>Id.</u> at page 24 of 25. "Period of Restoration" is defined as the period of time that "[b]egins with the date of direct physical loss or physical damage caused by or resulting from a Covered Cause of Loss at the 'scheduled premises,'" and ends on the date when "[t]he property at the 'scheduled premises' should be repaired, rebuilt or replaced with reasonable speed and similar quality." <u>Id.</u>

On July 23, 2008, the offices of DiLeonardo International in Warwick, Rhode Island, were struck by lightning during a severe thunderstorm.[3] As a result, the telephone, voicemail, fax, and e-mail system and servers were damaged. At that time, DiLeonardo International had two fax lines, one of which was provided to outside customers. Faxes were received via a multi-functional copier/printer/scanner/fax machine. DiLeonardo International also had one computer server exclusively dedicated to e-mail. The server was connected to other DiLeonardo affiliated entities

---

[3] The Plaintiffs disagree, in part, with Hartford's description of the exact events during the thunderstorm. Likewise, the Plaintiffs differ in their explanation as to how the phone, voice mail and fax systems were set up at DiLeonardo International. In particular, the Plaintiffs emphasize that the communication systems had a "symbiotic," *i.e.* interdependent relationship. Neither distinction is critical to the Court's analysis, however.

through a Microsoft exchange server. All principals of DiLeonardo International had company paid cellphones.

Ryan Stichel ("Stichel"), DiLeonardo International's IT manager, saw lightning hit the building. The power went out and Stichel, a former firefighter, was worried about a fire in the building. When Stichel saw smoke coming from the server room downstairs, he went into the room. According to Stichel, smoke was coming out of the phone system and he unplugged the phone system and "a couple of other bits and pieces."

Following the lightning strike, the voice mail server, which communicated with the phone system, was rendered completely nonfunctional, after which voice mails could not be retrieved. In addition, the phone system had reduced capacity and functionality, and the fax card appeared to be damaged and was removed by Stichel.[4] The number of phonelines available to DiLeonardo International was reduced and, after attempts to repair the system had failed, the entire phone system had to be replaced in order to restore voice mail and fax capability. Voice mail and fax were again fully functional by late September 2008.[5] The e-mail system

_____

[4]

The parties disagree about whether removal of an intact fax card resulted in DiLeonardo International's inability to send and/or receive faxes, or whether it was necessary to remove the fax card because it was damaged.

[5]

In their submissions resisting Hartford's summary judgment motion, Plaintiffs suggested, for the first time, that restoration was not complete until November 2008.

apparently continued to function throughout, after a one or two day interruption.

At the time of these events, the Plaintiffs were involved in several active projects, two of which are at issue in this litigation.  In 2006,[6], DiLeonardo Pacific entered an agreement with Shanghai Xintai Real Estate Co. Ltd. to provide interior design services for the Shanghai Kempinski Hotel facility (the "Shanghai Project") which was being specifically developed for a 2010 exposition.  The agreement required written notice to effect termination, together with payment for sums due for services rendered up to that date.

On May 5, 2008, DiLeonardo International entered an agreement with new client Senator for Hotels ("Senator") for full service interior design of the Gizeh Palace Hotel and Spa in Cairo, Egypt (the "Gizeh Project").  As in the Shanghai Project agreement, termination required written notice and payment for services rendered to date.  Robert Macaruso ("Macaruso"), a DiLeonardo International senior designer, was the project manager for the Gizeh Project.  Macaruso's role was to obtain design direction from Senator and produce a design and construction documents.  Hamed El Chiaty ("Chiaty") was Macaruso's main contact on the Gizeh Project.

The Gizeh Project was to be executed in four phases. Phase I,

---

[6]

According to the Plaintiffs, the agreement was revised in 2008.

related to schematic design, was to be completed within eight weeks of a May 2008 Cairo meeting. According to Hartford, Phase I was completed prior to the July 23, 2008 storm, whereas the Plaintiffs assert that Phase I was not completed because changes to the design were requested and a second presentation had become necessary. It appears that, prior to the lightning strike, Macaruso was trying to set up a second meeting with Chiaty by phone and e-mail, but had difficulty doing so. According to Macaruso, Chiaty was known to be difficult to reach or non-responsive at times. After the lightning strike, Macaruso could not use the phone or fax system at Plaintiffs' Warwick facility, but he had access to, and use of, a cell phone and home phone. Macaruso explained, however, that he did not inform Chiaty that Macaruso needed to contact him via different phone lines because he did not want Chiaty to know of DiLeonardo International's problems with its phone system.

Several e-mail communications between Chiaty and Macaruso in August 2008 indicate that the Gizeh Project was significantly delayed; that Chiaty was concerned; and that the Gizeh Project might not be continued. Although no written termination notice was received by the Plaintiffs, an e-mail from Chiaty, dated December 1, 2009, states: "Good day from Cairo, Thank you for your email. We are not continuing the project. Many thanks and best regards."

The Plaintiffs allege that the Shanghai Project and the Gizeh Project were prematurely terminated by the clients as a direct

result of the damaged communications system at the Warwick facility. The Plaintiffs' forensic accountant calculates the total business income loss as $1,535,500, which constitutes the sum of the entire value of both contracts.

## II. Procedural History

On July 21, 2010, the Plaintiffs filed a six-count complaint against Hartford in Rhode Island State Court, asserting claims of breach of contract (Count I), common law bad faith (Count III), bad faith pursuant to R.I. Gen. Laws § 9-1-33[7] (Count IV), and negligence (Count V). In addition to seeking a declaration that their claims are covered under the Policy (Count VI), the Plaintiffs request attorney fees pursuant to R.I. Gen. Laws §9-1-45 (Count II).

On August 27, 2010, Hartford filed an answer to the complaint and removed the case to this Court based on diversity jurisdiction. Following a Rule 16 conference on October 20, 2010, the parties engaged in discovery. On August 31, 2011, Hartford filed a motion for summary judgment. On October 17, 2011, the Plaintiffs filed a response in opposition to Hartford's motion. Hartford filed a reply on November 21, 2011.

Together with its reply, Hartford also filed four separate motions to strike (1) affidavits given by Ann McConaghy and Todd

---

[7]
    R.I. Gen. Laws § 9-1-33 relates to insurers' bad faith refusal
to pay a claim made under any insurance policy.

Tracy, on the ground that they were not disclosed as witnesses by the Plaintiffs in response to defendant's interrogatories; (2) two statements in Robert DiLeonardo's affidavit on the ground that such statements were based on hearsay and/or speculation; (3) the affidavit of Ryan Stichel, on the ground that it contradicts his prior sworn deposition testimony; and (4) three statements in the affidavit of Andrew Chiu, on the ground that such statements were based on hearsay and/or speculation.  In essence, Hartford alleged that the Plaintiffs included these materials improperly in order to create a controversy that would preclude summary judgment.  On December 9, 2011, the Plaintiffs responded to Hartford's motion to strike.  On December 14, 2011, the Court held a hearing on Hartford's motion for summary judgment, after which the Court took all of Hartford's motions under advisement.

### III. Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rule of Civil Procedure, the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party."  Scottsdale Ins. Co. v. Torres, 561 F.3d 74, 77 (1st Cir. 2009).  "A fact is 'material' if it has the potential of determining the outcome of the litigation."  Id. (quoting

Rodriguez-Rivera v. Federico Trilla Reg'l Hosp., 532 F.3d 28, 30 (1st Cir. 2008)).

The Court, in considering a motion for summary judgment, "must mull the facts in the light most agreeable to the nonmoving party and draw all reasonable inferences in that party's favor." Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011). However, the Court affords "no evidentiary weight to 'conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative.'" Id. (quoting Rogan v. City of Boston, 267 F.3d 24, 27 (1st Cir. 2001)).

The party seeking summary judgment must "demonstrate an absence of evidence to support the nonmoving party's case." Clifford v. Barnhart, 449 F.3d 276, 280 (1st Cir. 2006)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once that burden has been met by the moving party, the "party opposing summary judgment must 'present definite, competent evidence to rebut the motion,'" or the Court must grant the motion in favor of the moving party. Mendez-Laboy v. Abbot Labs., Inc., 424 F.3d 35, 37 (1st Cir. 2005)(citations omitted); Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d at 56 (Where the nonmovant "bears the burden of proof on the dispositive issue, it must point to 'competent evidence' and 'specific facts' to stave off summary

judgment.")(citation omitted). In this insurance case, the Plaintiffs bear the burden of making "a showing that a reasonable jury could supportably find that, more likely than not, the [alleged] loss occurred within the coverage period." Id. at 58.

**IV. Discussion**

(A) The Shanghai Project

Hartford takes the position that DiLeonardo Pacific is precluded from seeking coverage for its alleged losses from discontinuation of the Shanghai Project because it is not a named insured under the Policy. Hartford also points out that Plaintiffs have never submitted any invoices, billing records or other documents to show that DiLeonardo International ever billed DiLeonardo Pacific for services rendered in connection with that contract.

In response, the Plaintiffs submit that, had the Shanghai contract been fully performed, DiLeonardo International would have received income from the Shanghai contract to which only DiLeonardo Pacific was a signatory. The Plaintiffs also assert that the material issue in this case is not who the named insured under the Policy is, but whether DiLeonardo International lost income as a result of property damage to the insured premises (which income, in part, it would have received from DiLeonardo Pacific). Based on these contentions, the Plaintiffs claim the full value of the Shanghai contract as a business income loss to DiLeonardo

International, on the ground that DiLeonardo International expected compensation from DiLeonardo Pacific, the signatory to that contract, for services rendered.

It is undisputed that DiLeonardo Pacific is not a named insured under the Policy and that no provision in the Policy extends coverage to an affiliate or subsidiary of the named insured. At the hearing on this matter, counsel for the Plaintiffs confirmed that DiLeonardo Pacific, a subsidiary of DiLeonardo International, was required to incorporate separately to conduct business in China. Plaintiffs also conceded that DiLeonardo Pacific, which was the only entity that entered a contract for the Shanghai Project, never sought insurance coverage for business interruption in its own name.

The cases cited by Plaintiffs in support of their contention that DiLeonardo Pacific, although it was not a named insured under the Policy, should recover for business interruption, are not instructive because the factual circumstances and/or posture of the parties in those cases are clearly distinguishable from the case now before the Court. In Lavoi Corp., Inc. v. Nat'l Fire Ins. of Hartford, 293 Ga. App. 142, 666 S.E.2d 387 (2008), the Georgia Court of Appeals rejected an insured baking company's claim for business income/extra expense ("BI/EE") coverage related to the destruction of one of its bakeries. The Lavoi bakery company had obtained BI/EE coverage for two of its location, but not for the

third, which was still in construction.  After the third bakery was destroyed in a fire, Lavoi sought BI/EE coverage for the extra expense incurred at the other two (covered) bakeries to produce the goods necessary to meet the demands of clients who would have been serviced by the third bakery.  Holding that the policy at issue only covered expenses resulting from physical loss or damage to property with BI/EE coverage, summary judgment in the insurer's favor was affirmed.

In Pressman v. Aetna Cas. & Sur. Co., 574 A.2d 757 (R.I. 1990), the insured psychologist plaintiff sought reimbursement for the interruption of his business after a tree adjacent to his property fell onto the power line that serviced his building. The policy in question contained an exclusion for interruption of power "if the interruption takes place *away from the described premises*." Id. at 758.  After the trial justice granted summary judgment in favor of the insurer, the reviewing court sustained the plaintiff's appeal, vacated the judgment, and remanded the case for a trial on the merits because the exclusionary provision was ambiguous and it was not "unreasonable for the plaintiff to have believed that his loss would be covered." Id. at 760.

Neither case addresses the question of whether an affiliate or subsidiary - which is not a named insured - can recover under an insurance policy issued to its parent corporation on the ground that a loss suffered by the former may eventually impact the

latter. Although the Plaintiffs have asserted that DiLeonardo International and DiLeonardo Pacific have an interdependent working relationship, this does not create any coverage rights in DiLeonardo Pacific under a policy in which it is not a named insured.

Even if the Plaintiffs' arguments regarding this issue were to be accepted, the Plaintiffs' own statements indicate that the Shanghai Project was cancelled on or about October 9, 2008, because DiLeonardo Pacific submitted the same previously submitted design concepts to the client at a follow-up meeting, which did not meet the client's requirements. Although the Plaintiffs urge the Court to consider the facts in the context of time zone differences, cultural differences, and client personalities, they fail to establish that the interruption to their communications systems was the direct cause of losing the Shanghai Project. Therefore, Hartford's motion for summary judgment with respect to the Shanghai Project is granted.

(B) The Gizeh Project

With respect to the coverage claim by DiLeonardo International, Hartford asserts that the developer of the Gizeh Project did not terminate its business relationship with DiLeonardo International until more than a year after the "period of restoration" of the communications systems ended on or about September 19, 2008.

The Plaintiffs, on their part, state that they could not effectively communicate with their client on the Gizeh Project because they could not fax designs to the client and the client could not leave voice mails regarding the project. The Plaintiffs also suggest that the communications problems resulted in misunderstandings by clients from another culture or those with a difficult disposition.

The Policy provides coverage for the actual loss of business income "due to the necessary suspension of [the insured's] 'operations' during the 'period of restoration.' Suspension includes "partial slowdown" or "complete cessation" of the insured's business activities and must be caused by direct physical loss of, or physical damage to, the property. In this case, it is undisputed that a suspension of Plaintiffs' operation was not necessary, as DiLeonardo International continued to work on several projects, including the Gizeh Project. However, the Plaintiffs were apparently hampered by their inability to put in place alternative means for communicating with their clients.

Moreover, under the Policy, coverage is specifically excluded for business income loss caused by or resulting from the cancellation of the contract for the Gizeh Project unless such cancellation is directly caused by the necessary suspension of the named insured's operation. The Policy excludes "[a]ny Extra Expense, or increase of Business income loss, caused by or

resulting from . . . "Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of your 'operations', we will cover such loss that affects your Business Income during the 'period of restoration.'" Policy at page 18 of 25.

The undisputed facts establish that the Plaintiffs' operations were not suspended as a result of the lightning strike; rather, they remained open for business. The Policy, however, requires that, for business income coverage to apply, there be a "necessary suspension" of the named insured's "operations." Here, while the interruption of voice mail and fax systems may have presented a challenge to the Plaintiffs, it did not result in a total cessation of business. The Plaintiffs were also able to communicate by e-mail, cell phone and regular mail, although they were apparently hesitant to convey that information to some of their clients. According to Macaruso's deposition testimony, he deliberately chose not to inform Chiaty that Macaruso needed to use another telephone line because he did not want Chiaty to know about DiLeonardo International's communication problems. Because the Plaintiffs have submitted no evidence to support their contention that the cancellation of the Gizeh Project was the direct result of DiLeonardo International's business suspension, the Policy's exclusion provision applies.

Moreover, the Policy only provides coverage for business income loss during the "period of restoration," which is defined as "the period of time that . . . begins with the date of direct physical loss or physical damage caused by or resulting from a Covered Cause of Loss at the 'scheduled premises,' and . . . [e]nds on the date when . . . [t]he property at the 'scheduled premises' should be repaired, rebuilt or replaced with reasonable speed and similar quality." Policy at page 24 of 25.

It is undisputed that the "period of restoration" started on July 23, 2008, the day on which the Plaintiffs' communication system was damaged by lightning. Plaintiffs' representation that they could not fax until late September is irreconcilable with their acknowledgment that they had at least one fax line running at the Warwick office between August 14 and September 19, 2008. Although the Plaintiffs now seek to introduce, for the first time, what they claim are "newly discovered" emails which purport to indicate that the system was not completely restored until November 2008, the undisputed admissible evidence establishes September 19, 2008, as the date on which Plaintiffs' voice mail and fax capabilities were completely restored.

The Plaintiffs have not submitted any admissible evidence to support their contention that the Gizeh Project was cancelled during that time period. Although they offer the unsubstantiated contention of Mr. Macaruso that he was told by Chiaty in the fall

of 2008 that the Gizeh Project would not be continued, the December 1, 2009 e-mail notification is the only admissible evidence which establishes that termination of the Gizeh Project did not occur until more than a year after the "period of restoration."[8] Plaintiffs' own statements indicate that the Gizeh contract was cancelled because the Plaintiffs failed to perform work on the project between June and August 2008, not because their communications system was impaired.

In sum, Plaintiffs have failed to show that (1) the Gizeh Project was terminated during restoration of the communications system; and (2) the failure of the communications system caused cancellation of that project. It is undisputed that the Plaintiffs suffered significant damage to their communications systems and that full fax and voice mail capabilities were not restored for a period of approximately 2 months - in part, because Plaintiffs decided to upgrade the system while those repairs were being conducted. Hartford asserts, and the Plaintiffs do not dispute, that during that time, Plaintiffs had the capacity to e-mail and to communicate by use of cell-phones and/or employees' home phones. The Plaintiffs now seek to recover under the Policy for the loss of two contracts, which they attribute to their inability to communicate with their clients during the "period of restoration."

---

[8] As Hartford points out, Plaintiffs did not produce the formal written notice required for termination of the Gizeh Project.

However, the Plaintiffs have furnished no evidence to indicate that the Plaintiffs' inability to use fax and/or voice-mail caused the loss of those contracts; rather, the loss seems to have been caused by the Plaintiffs' inability to communicate effectively with their clients for other reasons.

The Plaintiffs have submitted no evidence that either of the contract cancellations were "directly caused by the suspension of [Plaintiffs]' operations," which is necessary to except it from the Policy exclusion. From the parties' submissions, it is evident that the Plaintiffs' operations were not suspended. Rather, the operations were impacted by the damage to the communications systems and Plaintiffs' apparent inability to find some way around that impediment. Therefore, Hartford's motion for summary judgment as it relates to the Gizeh Project is granted.

(C) Negligence

In their complaint, the Plaintiffs allege that Hartford was negligent in assessing, investigating, repairing, arranging to repair, and restoring the damaged communication system. Complaint ¶¶ 35-39. At the hearing on Hartford's motion to dismiss, Plaintiffs asserted that Hartford did not take the necessary care and attention to investigate the Plaintiffs' claim.

Hartford, on its part, takes the position that, with respect to the communication equipment, Hartford was only required to determine the cause and amount of loss, and then pay for any repair

or replacement. According to Hartford - and Plaintiffs have offered no evidence to dispute this contention - it met these obligations. Hartford also points out that the Plaintiffs, not Hartford, hired the contractors to conduct the repairs and that the Plaintiffs made all decisions regarding the repairs of the communication system.

The Plaintiffs, who bear the burden of demonstrating that their claims are covered under the Policy, "must point to 'competent evidence' and 'specific facts' to stave off summary judgment." <u>Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London</u>, 637 F.3d at 56. In this case, the Plaintiffs' primary claim against Hartford challenges the insurer's denial for business income loss. The Plaintiffs have offered no evidence to suggest that Hartford was negligent in investigating their claims or that it had any obligations beyond those specified in the Policy. For those reasons, the Hartford's motion for summary judgment with respect to the Plaintiffs' negligence claim is granted.

(D) Bad Faith Claim

Finally, regarding Plaintiffs' bad faith claims, Hartford argues that, because the Plaintiffs fail to establish that they are entitled to recover under the Policy, and availability of coverage for Plaintiffs' business income loss was fairly debatable, the bad faith claim fails as a matter of law. Hartford is correct. It is

undisputed that Hartford investigated the claim and met its obligations with respect to the assessment of damages to the communications system and that it paid for the necessary repairs. Hartford also investigated the Plaintiffs' business income loss claims and denied such claims, based on the coverage and exclusion provisions of the Policy. Because this Court agrees with Hartford's determination that losses resulting from the Shanghai Project were not covered because DiLeonardo Pacific was not a named insured under the Policy, and that the Gizeh Project was not covered because the related contract was not terminated within the "period of restoration," and was not the direct result of damage to the communication system, Plaintiffs' claims of bad faith must fail. Therefore, Hartford's motion for summary judgment is granted with respect to those claims.

## V. Hartford's Motions in limine

(A) Motion to strike affidavits (Docket #28)

In support of their objection to Hartford's summary judgment motion, the Plaintiffs include the affidavit of Ann Mconaghy, the International Comptroller of DiLeonardo International, and Todd Treacy, its Financial Comptroller. Both affidavits purport to establish a financial link between DiLeonardo International and DiLeonardo Pacific, in order to support the Plaintiffs' contention that DiLeonardo Pacific's loss of the Shanghai Project resulted in a business income loss for DiLeonardo International. Based on the

Court's determination that DiLeonardo Pacific is a separate entity which is not a named insured under the Policy and, therefore, not entitled to coverage, the admissibility of those affidavits is now moot. The Court does note, however, that neither individual was properly disclosed by the Plaintiffs in response to Hartford's interrogatories. See Fed. R. Civ. P. 37(c)(1).

(B) Motion to Strike Paragraphs (Docket # 30)

Hartford seeks to strike two statements in the affidavit of DiLeonardo International CEO Robert DiLeonardo ("DiLeonardo") that was submitted in support of the Plaintiffs' objection to Hartford's summary judgment motion. In paragraph 8 of his affidavit, DiLeonardo states that Chiaty "told [him]" that Chiaty only had the ability to receive and send faxes, not e-mail attachments. In response to Hartford's assertion that this statement constitutes inadmissible hearsay, the Plaintiffs maintain that the paragraph does not contain any hearsay because "'falling outside the category of hearsay [are] statements made by one person which become known to another offered as a circumstance under which the latter acted and as bearing upon his [subsequent] conduct.'" Pltfs.' Sur-Response Mem. at 8. Even if DiLeonardo's statement were offered to explain why DiLeonardo failed to e-mail (rather than fax) design changes to Chiaty, a determination of whether communication problems resulted in cancellation of the project still depends on whether Chiaty could, in fact, receive attachments by e-mail. No

affidavit of Chiaty was submitted to confirm whether this was the case, and the Plaintiffs offer no explanation why such an affidavit was not obtained.  As such, DiLeonardo's statement constitutes inadmissible hearsay under Fed. R. Civ. P. 801(c)(2).

In paragraph 9, DiLeonardo explains that he did not tell Chiaty that DiLeonardo International could neither send nor receive faxes because Chiaty "as is custom in the Middle East - <u>may have viewed </u>such an 'admission' as a weakness'. . . [and] <u>may have seen</u> such an 'admission' as an obstacle to a timely fulfillment of the [Gizeh Project] with the result that the continuation of the contract on the [Gizeh Project] <u>could have been</u> seriously jeopardized." DiLeonardo Affidavit (emphasis added).  DiLeonardo's own statements indicate that Hartford's objection to this statement as based on mere speculation and conjecture is well taken; therefore, the Court deems it inadmissible.

(C) Motion to Strike Affidavit (Docket # 32)

Hartford takes particular objection to Plaintiffs' submission of the affidavit of DiLeonardo's IT Manager Ryan Stichel, in which Stichel declares that he only recently discovered a number of e-mails which have "refreshed [his] memory as to the date" the fax system was fully reconnected after the storm.  In his deposition on June 20, 2011, Stichel testified, under oath, that the communications via fax at the Plaintiffs' office facility were fully restored in September 19, 2008.  Based on his "restored and

refreshed" memory, Stichel now attempts to change his position by asserting that the fax "was not reconnected until the first week of November 2008." Stichel Affidavit ¶ 8.

As Plaintiffs conceded at the December 14, 2012 hearing on Hartford's motions, Stichel had an opportunity to review his deposition testimony and requested no changes thereto. It is undisputed that the Plaintiffs initially represented to Hartford that the restoration period ended on or about September 2008. It is also undisputed that these e-mails, although they had always been in Stichel's possession, were not disclosed in response to Hartford's discovery requests. Instead, the e-mails were first submitted in support of the Plaintiffs' objection to Hartford's motion for summary judgment. The Plaintiffs have offered no justification for such an omission.

Pursuant to Rule 37 of the Federal Rule of Civil Procedure, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Based on the circumstances in this case, the Court deems Stichel's affidavit inadmissible. Even if the Court were to consider the Plaintiffs' assertion that the fax system was not completely restored until November 2008, Plaintiffs failed to establish that the Gizeh

Project was terminated prior to December 2009 or that the damaged communication system was the direct cause of the Gizeh Project's termination.

(D) Motion to Strike Paragraphs (Docket #34)

Hartford seeks to strike three statements contained in the affidavit of Andrew Chiu, Managing Director for DiLeonardo Pacific, on the grounds that they are improper hearsay or based on speculation and conjecture. Chiu, like DiLeonardo, explains that he did not tell the Chinese client that DiLeonardo Pacific was unable to receive or send faxes because the client "as is the custom in China - would have viewed such an 'admission' as a weakness that would have seriously jeopardized the continuation" of the Shanghai Project. Chiu Affidavit ¶ 33. Chiu also states that he was told that design changes were needed on the Shanghai Project, see id. ¶ 33, and that certain design materials submitted by DiLeonardo Pacific to its client on October 9, 2008 were "a big disappointment." Id. ¶ 36.

Because DiLeonardo Pacific, for reasons explained in Section **IV** (A) herein, is not eligible for coverage under the Policy, the admissibility of Paragraphs 21, 33, and 36 is moot.

**Conclusion**

For the reasons stated herein, Hartford's motion for summary judgment is GRANTED with respect to all counts of the Complaint. Hartford's Motions to Strike (Docket ## 28, 30, 32, and 34) are

GRANTED.  Judgment shall enter in favor of Hartford.


SO ORDERED.


/s/ Mary M. Lisi

Mary M. Lisi
Chief United States District Judge

March 29 , 2012